IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| D.B., BY AND THROUGH ) <br> HER GUARDIAN, KATRINA WARR ) <br> AND KATRINA WARR, ) <br> INDIVIDUALLY ) <br>    Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MONTGOMERY COUNTY SCHOOL ) <br> DISTRICT, ) <br> ) <br>    Defendant. ) | CIVIL ACTION NUMBER: <br><br> 2:07cv783-MHT |

## MOTION FOR TEMPORARY RESTRAINING ORDER OR IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

COME NOW Plaintiffs, by and through counsel, and, pursuant to Rule 65 of the Federal Rules of Civil Procedure, move this Court for a Temporary Restraining Order or, in the alternative, a Preliminary Injunction directing that the defendant cease and desist from utilizing the "wedge" as form of restraint on D.B. until further of this Court. D.B. is in danger of suffering immediate and irreparable injury as a result of the defendant's use of the wedge. As grounds for this Motion, plaintiffs state the following:

    1.    D.B. is a thirteen year old special education student with the aforementioned disabilities. D.B. currently attends Dalraida Elementary School.

She sometimes engages in inappropriate behavior due to her autism, but these difficulties are easy to remediate if done appropriately. ([1]Decl. Sonja Lewis (Exh. A); Decl. Robert Babcock (Exh. B).

    2.    IDEA is a Federal statute which entitles D.B. to comprehensive evaluations to identify her needs and a FAPE to meet her unique needs. 20 U.S.C. 1400 *et. seq*. IDEA provides federal financial assistance to school districts who implement its substantive and procedural requirements. Congress enacted IDEA based on its finding that the millions of children with disabilities had educational needs which were not being met due to, *inter alia*, inappropriate public school placements. 20 U.S.C. 1401.

    3.    A FAPE is defined as "special educational related services which (A) have been provided at public expense, under public supervision and direction and without charge, (B) meet the standards of the state educational agency, including the requirements within the laws (C) include an appropriate preschool, elementary or secondary school education in the state involved and (D) are provided in conformity with an individualized education program (IEP)." 34 CFR 300.13. A student's IEP must be jointly designed by the district staff and the parents, who shall be equal participants in the education process. Students eligible for services

---

[1]All Exhibits referenced herein are Exhibits to the Complaint being filed in this action.

under IDEA do not necessarily need to be served in "special education" classes. Rather, many students receive appropriate services in regular classes based, *inter alia*, on IDEA's least restrictive mandate which requires that students be served in the least restrictive environment. 34 C.F.R. 300.114.

4.   IDEA recognizes that many students have disabilities which cause them to display behavioral or emotional difficulties. These students need progressive programs which are designed to teach the students how to control their behavior, rather than to rely on punishment. Thus, IDEA imposes restrictions on the type of punishment that may be used on children whose disability causes their behavior problems. 34 C.F.R. 300.530, *et. seq.*[2] Further, the definition of "education" is extremely broad. It includes specially designed services to meet a child's and behavioral needs. 34 C.F.R. 300.39. A student's educational program

---

[2]*See, eg. Waukee Community School District*, 48 IDELR 26 (SEA Iowa 2007)(behavior intervention plan violated IDEA where implementation "not in a manner supported in the peer-reviewed research literature or consistent with prescribed practice" and adequate progress monitoring of interventions involving the use of physical force may have indicated their ineffectiveness for the child); Portland (ME) School District, 352 IDELR 492 (OCR 1987)(teacher's strapping a student in his wheelchair and then tying the chair to the radiator as part of a behavior intervention plan was not justified by any emergency situation and violated student's right to FAPE); *Cecil County Public Schools*, 107 LRP 22614 (Md Dept. of Ed. 2006)(even though staff were trained in use of physical restraint, hearing officer found that district violated state educational code by physically restraining student in circumstances not specifically outlined in students IEP. Additionally, school staff did not document use and subsequent failure of less intensive interventions before using the physical restraint.)

must be based on techniques which have been validated by peer reviewed research. 34 CFR 300.320(a)(4).

5. One of IDEA's hallmarks is its procedural mechanism which was enacted to assure full and meaningful parental participation in all decisions regarding identifying, evaluating and designing a student's educational program. Congress provided parents with substantial due process rights so as to assure that they have meaningful input into their child's educational program, and so that a school district would not have any "natural advantage" in assuring the implementation of an IEP. The procedural safeguards include, *inter alia*, the right to an impartial due process hearing if a parent "believes his or her that their rights or the rights of their children have been violated." Ala. R. 290-8-9-.08(8); 34 CFR 300.507; 20 U.S.C. 1415.[3]

6. Here, defendant has failed to provide D.B. with an appropriate program in that, *inter alia*, defendant has failed to provide D.B. with a program to appropriately address her autism and other disabilities. (Exhs. A and B).

7. One of the major deficiencies in D.B.'s program is defendant's failure

---

[3] Any party who is aggrieved by the decision of the impartial due process hearing officer is entitled to judicial review by a state or Federal court. The reviewing court shall receive the administrative records, shall hear additional evidence at the request of either party and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. 1415(i)(2).

to provide D.B. with an appropriate behavior management program which is both based on positive behavior interventions, as required by IDEA, and validated by peer reviewed research. Rather, defendants are utilizing aversive behavior management techniques such as restraint, which subjects D.B. to serious and immediate danger of physical injury. (Exhs. A and B).

8. *Inter alia*, defendant restrains D.B. in a "wedge" when she allegedly displays inappropriate behavior.

9. The "wedge" is actually a device which is designed for use by an occupational therapist to increase a person's ability to bear weight on her upper extremities. The "wedge" is a blue vinyl covered triangularly shaped device which is made of firm foam rubber. It is approximately 20-24 inches wide and 4-5 feet long. The "wedge" has several velcro straps running down the length of the device. (Exh C., Hearing Transcript ("TR") 57-58). To appropriately use the wedge, a person should be positioned with her arms outside of the velcro straps and in front of her, in such a manner as the child can lean on her elbows or hands which are on the floor. In the event a child's elbows or hands cannot reach the floor, a small step is placed under them to allow the child to increase her strength. A child's arms are never to be restrained within the velcro. (Exh. A).

10. Restraining D.B. in a "wedge" is extremely dangerous. The district's

use of the "wedge" as a mechanical restraint has never been approved by a qualified behavior management specialist or by a physician. (TR 30). One of D.B.'s teachers who participates in the restraining of D.B., admits that she does not know how the "wedge" came to be used with D.B., or who recommended its use with D.B.

11.     District staff restrain D.B. by using several adults to force D.B. to lie on her stomach on the "wedge" while the staff strap D.B. to the device with the velcro straps, which run from D.B.'s shoulder to her feet. Defendant straps D.B.'s arms down to her side within the velcro. D.B.'s head then hangs over the highest edge of the device, which is approximately 12 to 18 inches off of the floor. D.B. is typically in the wedge 10 to 15 minutes, but there is no data kept on the length of time she is in restraint. (TR 40, 56-58). Thus, for 10-15 minutes, D.B. must hold her head up and off the end of the device while she if forced to helplessly lie face down with her arms strapped to her side.[4] This position is highly dangerous, especially given D.B.'s developmental disabilities and seizures. D.B. also has low muscle tone and it would be very hard for her to hold her head in an upright position so that the weight of D.B.'s head does not push her neck in the front of

---

[4]To understand the restraint, the undersigned was strapped in it on August 27, 2007. It is very hard to hold one's head up in this position. However, such is necessary to avoid experiencing too much pressure on the front on a person's neck.

the wedge. (Exhs. A and B).

12.   District staff who help restrain D.B. have no training to mechanically restrain any child, including D.B. (TR 54, 120). For example, Elsie Keith, the principal of Dalraida, readily admits that she is not trained in restraint. She testified that she helps with the restrain by holding the D.B.'s feet. (TR 102-103). District staff use entirely subjective judgement regarding whether to restrain D.B. According to Ms. Galloway, D.B.'s current teacher, D.B. is forced into the "wedge" "when need be." (TR 40).[5] Other staff who helped restrain D.B. could not even explain how D.B. was restrained except to say that she (the staff person) "had an arm" and other staff "would probably have a leg or something." (TR 151-152). Some of the staff who strap D.B. into the wedge did not even know that D.B. has seizures. (TR 120).

13.   The use of the "wedge" as a mechanical restraint is not based on scientific or peer review research. (TR 32-33). Keith admitted that she has no evidence that D.B.'s program is peer review research based. (TR 93, 101). And, the risk of harming D.B. via restraint is real. In 2002, D.B.'s collarbone was

---

[5]During the 2006-07 school year, the district restrained D.B. to the wedge at least 4 times, with increasing frequency as the year progressed.

broken when district staff physically restrained her.[6]

14.  Consequently, on March 28, 2006, plaintiff requested a due process hearing under IDEA to challenge D.B.'s program. Michael Cole was appointed to serve as a hearing officer. Testimony has been taken over four non consecutive days and additional hearing days are scheduled though mid October 2007.

15.  D.B. has been evaluated by Dr. Caroline Gomez and Dr. Robert Babcock, two experts in autism and behavior management. Both experts also visited the school and reviewed D.B.'s educational records. (Exhs. A and B).

16.  According to Drs. Babcock and Gomez, as well as Sonja Lewis, D.B.'s occupational therapist, restraining D.B. to the wedge subjects her to a substantial risk of serious harm. (Exhs. A and B; TR 352-353). If D.B. is positioned so that her neck hangs over the edge of the "wedge" it would be very easy for D.B.'s larynx to get pressed down on the edge of the wedge simply from the weight of her head. Pressing down on a person's larynx may cause her to choke or aspirate or asphyxiate. Further, with her arms velcroed down to her sides, D.B. would have significant difficulty keeping her head up high enough to keep her larynx clear of the wedge's edge. This is especially true given that D.B. is

---

[6]District staff did not use a "wedge" when D.B.'s collar bone was broken. Defendant's accident report states that while D.B. was on the floor, staff "made the decision to maintain pressure on (D.B.'s) upper body." D.B. was eight years old.

physically forced into the wedge by untrained district staff and given that she has seizures. It is also significant that D.B. has overall low muscle tone. (Exhs. A and B)

17. According to both Drs. Babcock and Gomez, D.B.'s behavior problems are not significant and her education program is inappropriate to meet her needs. (TR 83). D.B.'s program was the worst Dr. Gomez has ever observed in the state of Alabama. (TR 300). Both experts have stated that while, D.B. may occasionally display inappropriate behavior due to her disabilities, her behavior may be easily brought under control via the utilization of appropriate techniques, which do not include restraint. Both experts believe that the wedge has absolutely no place in the continuum of interventions that might be a part of an appropriate behavior plan for D.B. (TR 362). Additionally, defendant's overreaction to D.B., including using the "wedge", instead of calming D.B., actually has the effect of exacerbating her behavior. Both experts agreed that their concerns about the D.B.'s physical safety while in the wedge increased even further after learning that none of the staff who use the device had been trained to do so. (Exh. B; TR 336).

18. Defendant is aware of the serious safety concerns regarding the "wedge." However, defendant still refuses to discontinue the use of the "wedge."

19. Plaintiffs have also requested that the district stop using the wedge to

restrain D.B. Plaintiffs have also requested that district consult with an independent behavior management specialist who has a background in autism. Defendant has refused both of these requests.[7] D.B. is still subject to being restrained on the "wedge" and, thus, is subject to serious and immediate physical injury.

20. At the hearing, plaintiff asked Hearing Officer Cole whether he believed he had the authority to issue an injunction to prohibit the use of the "wedge." Hearing Officer Cole indicated that he has no authority under IDEA to Order any preliminary injunctive relief. It is anticipated that Hearing Officer Cole will not render his administrative decision until, at least, November or December, 2007.

21. In light of the forgoing, a Temporary Restraining Order and/or a Preliminary Injunction is necessary to prevent D.B. from a high risk of significant and irreparable harm.

27. There is minimal, if any, prejudice to defendant by the issuance of Preliminary Injunctive Relief or a Temporary Restraining Order.

WHEREFORE, plaintiffs respectfully pray that this Court grant the following

---

[7]Recently, the parties have agreed to place D.B. in more regular education classes and to design a new behavior management program. However, defendant insists that it will use the wedge if it so chooses and it has refused to discontinue the use of the "wedge" until a new behavior program is developed.

this Motion and enter a temporary restraining Order and/or a preliminary injunction, that the defendant cease and desist from utilizing the "wedge" as form of restraint on D.B. until further of this Court.

Respectfully submitted,

_____
Deborah A. Mattison
Attorney for Plaintiffs

**OF COUNSEL:**
**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**
The Kress Building
301 19th St. N.
Birmingham, Alabama 35203
(205) 314-0500

## CERTIFICATE OF SERVICE

I do hereby certify that I have on August 30, 2007, served the defendant a copy of this Motion via U.S. Mail, postage prepaid as follows:

Montgomery County Public Schools
1153 South Lawrence St.
Montgomery, AL 36104

_____
OF COUNSEL

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| D.B., BY AND THROUGH<br>HER GUARDIAN, KATRINA WARR<br>AND KATRINA WARR,<br>INDIVIDUALLY<br>    Plaintiffs,<br><br>v.<br><br>MONTGOMERY COUNTY SCHOOL<br>DISTRICT,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NUMBER:<br>)<br>)   2:07CV783-MHT<br>)<br>)<br>) |

**TEMPORARY RESTRAINING ORDER**

The above-styled cause came before the Court on Plaintiffs' complaint and motion for temporary restraining order, or in the alternative, complaint for preliminary injunction. After reviewing Plaintiffs' motion and supporting declarations, it is hereby ORDERED, pursuant to Rule 65, Federal Rules of Civil Procedure, as follows:

1. Plaintiffs have shown that, absent granting of this Temporary Restraining Order, D.B. would be in danger of suffering immediate and irreparable injury. The District has refused to cease its use of the mechanical restraint device called the wedge on D.B. D.B. could suffer serious physical harm to include choking, aspiration, and asphyxiation if restrained in the wedge. D.B. is subject to

defendant's use the wedge at any time during the school day.

2. The District must cease and desist from utilizing the "wedge" as form of restraint on D.B. until further of this Court.

3. This Order is entered without notice to the opposing party due to the magnitude of the potential injury and irreparable harm and the relative absence of prejudice to the defendant.

This Order shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. This Order is binding on defendant and defendant's officers, agents, servants, employees, and attorneys.

**SO ORDERED** this _____ day of _____, 2007, at _____.

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| D.B., BY AND THROUGH ) | |
| HER GUARDIAN, KATRINA WARR ) | |
| AND KATRINA WARR, ) | |
| INDIVIDUALLY ) | |
|    Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NUMBER: |
| ) | 2:07cv783- MHT |
| MONTGOMERY COUNTY SCHOOL ) | |
| DISTRICT, ) | |
| ) | |
|    Defendant. ) | |

## PRELIMINARY INJUNCTION

The above-styled cause came before the Court on Plaintiffs' complaint and motion for temporary restraining order, or in the alternative, complaint for preliminary injunction. After reviewing Plaintiffs' motion and supporting declarations, it is hereby ORDERED, pursuant to Rule 65, Federal Rules of Civil Procedure, as follows:

    1.    Plaintiffs have shown that, absent granting of this Temporary Restraining Order, D.B. would be in danger of suffering immediate and irreparable injury. The District has refused to cease its use of the mechanical restraint device called the wedge on D.B. D.B. could suffer serious physical harm to include choking, aspiration, and asphyxiation if restrained in the wedge. D.B. is subject to

defendant's use the wedge at any time during the school day.

2. The District must cease and desist from utilizing the "wedge" as form of restraint on D.B. until further of this Court.

This Order shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. This Order is binding on defendant and defendant's officers, agents, servants, employees, and attorneys.

**SO ORDERED** this _____day of _____, 2007, at _____.

_____
United States District Judge